# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| KEVIN LEE JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHERRY LINDAMOOD et al., )<br>)<br>Defendant. ) | NO. 1:18-cv-0010<br>CHIEF JUDGE CRENSHAW |

## MEMORANDUM OPINION

Kevin Lee Johnson is a state prisoner incarcerated at the Whiteville Correctional Facility in Whiteville, Tennessee, although the events about which he complains took place while he was incarcerated that the South Central Correctional Facility in Clifton, Tennessee. Before the court is Plaintiff's application to proceed *in forma pauperis* (Doc. No. 2). In addition, Plaintiff has filed a civil rights complaint against Defendants Cherry Lindamood, Ryan Dethrage, Stanly Wilbanks, Rhonda Staggs, and Nurse Jane Doe, which is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee of $350 required by 28 U.S.C. § 1914(a). Because it appears from Plaintiff's submissions that he lacks sufficient financial resources from which to pay the full filing fee in advance, the application (Doc. No. 2) will be granted.

Nevertheless, under § 1915(b), Plaintiff remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs' the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff will be assessed the full $350 filing fee, to be paid as directed in the order accompanying this memorandum opinion.

## II. INITIAL REVIEW

Under the PLRA, the court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the court must dismiss the complaint, or any portion thereof that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-

pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**A. Factual Allegations**

Plaintiff alleges that from approximately December 26, 2016 to January 22, 2017, while he was housed at the South Central Correctional Facility, he was exposed to naked wiring which shocked him nearly every day and his cell was infested with mold, causing him to experience migraine headaches, nausea and pressure in his chest. (Doc. No. 1.) Specifically, Plaintiff alleges that on December 26, 2016, Correctional officer ("CO") Livingston told CO Wilson to bring Plaintiff a cleaning kit so he could clean his cell, but Plaintiff was not given a cleaning kit. (Id.) Plaintiff sent his third request to Defendant Staggs and his first request to Defendant Dethrage complaining about his living conditions. (Id. at Page ID#7.) Plaintiff asked CO Bright and CO Cantrel to send a HazMat team to clean his cell and to take pictures of his cell to substantiate his complaints about mold and exposed wiring, he was told that someone would come and take care of the mold, but no one came. (Id. at Page ID#7-8.) Plaintiff asked Ms. Bridges for an emergency sick call because he was nauseas and having chest pain, but his request was denied. (Id.)

On December 28, 2016, Plaintiff spoke to CO Brantly who pretended that he did not know anything about Plaintiff's mold and exposed wire problems, despite being told about the problems numerous times. (Id. at Page ID# 8.) On December 29, 2016, Plaintiff asked for a cleaning kit. (Id.) His request was at first denied but he eventually got a cleaning kit and cleaned some of the mold in his cell, until he got nauseas and had to stop. (Id.) On December 29

3

and 30, 2016, Plaintiff asked CO Brantly to have a HazMat team come to clean his cell, but his requests were denied. (Id.) On December 30 and 31, 2016, Plaintiff experienced unbearable headaches and chest pains. (Id.) He requested a sick call but, did not see a nurse. (Id.)

On January 1, 2017, Nurse Matt Smith wrote a report regarding the mold and exposed wiring in Plaintiff's cell and gave the report to Nurse Rick Plonk. (Id.) On January 4, 2017, CO Brantly told Plaintiff that his cell would be cleaned with "mean green," but Plaintiff's cell was not cleaned. (Id.) CO Trafton told Plaintiff that Defendant Staggs told CO Trafton that Plaintiff's cell had been cleaned. (Id.) On January 5, 2017, Plaintiff was taken to the outdoor recreational cages and left outside for more than two hours while his cell was supposed to be getting cleaned. (Id.) Plaintiff cell mate told him that the cell was getting cleaned, but it was only cleaned for "two minutes." (Id. at Page ID# 9.) Plaintiff went back to his cell and found that one spot on the wall had been cleaned, but nothing else, and the spot that was cleaned did not even have mold on it. (Id.) Plaintiff also learned that CO Bright and some other workers, and not a HazMat team, cleaned his cell. (Id.) Plaintiff asked CO Brantly why his cell was not fully cleaned and was told that CO Bright got bleach in his eyes and had to stop. (Id.) Plaintiff asked CO Brantly for an emergency sick call because he "could not feel [his] toes" because he was left outside in the cold wearing his shower shoes. (Id.) Plaintiff alleges that a nurse came by his cell and saw him through a window in his door and said that he was ok. (Id.) Plaintiff alleges that the nurse could not really know whether he was ok just by looking through the window. (Id.) Plaintiff alleges that there is mold on every wall, on his bunk and all over his sheets. (Id.)

On January 5, 2017, Defendant Staggs, COs Brantly, Villanueva, Bright and Gorska came to his cell to inspect the cleaning. (Id.) Plaintiff told them that his cell was not properly cleaned. (Id.) Defendant Staggs wiped Plaintiff's mattress and bed post with a piece of wet

4

tissues, which she then showed to COs Bright and Brantly. (Id.) The tissue had mold all over it. (Id.) Defendant Staggs appeared to be upset with what she saw, but Plaintiff alleges that Defendant Staggs was just "trying to keep up appearances by doing cell inspections." (Id.) On January 8, 2017, Captain Kiddy took pictures of the mold and exposed wires in Plaintiff's cell. (Id.) On January 9, 2017, Plaintiff spoke with CO Cantrel and a Nurse and asked them about his headache medicine. (Id.) The Nurse said that "the[y] stopped it" and tried to triage Plaintiff through the door of his cell, to which he objected. (Id. at Page ID#10.) CO Contrel asked Plaintiff if he wanted a cleaning kit to clean the mold, but Plaintiff told CO Contrel that he would not clean the mold because last time he cleaned the mold it made him very sick. (Id.) Plaintiff asked CO Contrel to clean it but CO Contrel said he cannot clean the mold because he is not HazMat certified. (Id.) On January 10, 2017, Nurse Matt Smith came to Plaintiff's cell door and told Plaintiff that Nurse Rick Plunk had spoken to Defendant Wilbanks who indicated that he would have the cells cleaned for mold, mildew and fungi. (Id.)

On January 13, 2017, Defendant Lindamood came into Plaintiff's pod to do an inspection and "stated that it was not mold and that I have refused to clean my cell." (Id.) Plaintiff alleges that he cannot clean the mold because he is not HazMat certified and because the mold has been making him sick. (Id.) On January 14, 2017, Plaintiff woke up with a terrible headache and smelling ammonia. (Id.) Plaintiff flipped over his mattress and it was covered with mold. (Id.) Plaintiff told CO Stultz about the mold on his mattress. (Id.) Plaintiff asked CO Trafton for new sheets but she refused to help. (Id.) On January 15, 2017, Plaintiff asked CO Trafton for an emergency sick call because he was having bad migraines and chest pains. (Id.) CO Trafton said she called medical but "they refused to see me." (Id.) CO Trafton also said she emailed Defendants Staggs and Wilbank. (Id.) Plaintiff eventually got a new sheet, but by the next day it was showing signs of mold. (Id.) On January 16, 2017, CO Stultz refused to allow Plaintiff to

5

take a shower. (Id.) Plaintiff asked to speak to CO Westerman "to get the Captain up here so I can speak with him because of the mold." (Id.) On January 17 and 19, 2017, Plaintiff asked CO Brantly for new sheets and cloths but, he never got any. (Id.) On January 20, 2017, Plaintiff asked CO Trafton for an emergency sick call, but was denied. (Id.) On January 21, 2017, Plaintiff told Nurse Matt Smith and CO Boney about the mold, he showed them his sheets and told them that he was having migraines and chest pains. (Id.) Nurse Smith said that he would talk to "RN" tonight. (Id.) Plaintiff told Nurse Smith and CO Boney that he needed an emergency sick call, but he has been refused. (Id.) CO Brantly told Plaintiff that RN Petty was going to get Plaintiff sick call, but he was not seen at sick call. (Id.) Plaintiff notes that he was told he could not be seen in sick call because the medical personnel were dealing with an inmate who attempted suicide. (Id.) Plaintiff was never seen in sick call. (Id.)

Plaintiff alleges that at some point CO Livingston and CO Bishop walked him back to his cell after an emergency sick call and saw the mold infestation under the bed and on the walls. (Id. at Page ID# 11.) He also alleges that he cut a paint chip off the wall and could see three different layers of paint. (Id.) He alleges that, rather than clean the mold, the facility simply painted over it.

On January 22, 2017, Plaintiff was transferred to the Whiteville Correctional Facility. (Id.) Plaintiff was told by another inmate that after he left, the cells in his pod were extensively cleaned. (Id.) Plaintiff alleges that his Eighth Amendment rights have been violated. As relief he seeks money damages, the firing of all Defendants and an order prohibiting him from being housed in a CCA/Core Civic prison.

**B. Discussion**

**1. <u>Eighth Amendment Claims</u>**

Plaintiff alleges two separate Eighth Amendment violations. First, he alleges that he was

6

exposed to a significant level of black mold and exposed wiring in his cell and that, despite being aware of the problem, Defendants failed to correct it. Second, he alleges that he was repeatedly denied sick call despite the presence of mold causing him significant health issues; nausea, migraines and chest pains.

A. Black Mold

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." Rhodes v. Chapman, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting Rhodes, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347; see also Wilson v. Yaklich, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." Rhodes, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Rhodes, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." Id.

In order for a prisoner to prevail on an Eighth Amendment claim, he must satisfy subjective and objective components. To satisfy the subjective component, Plaintiff must show that he faced a sufficiently serious risk to his health or safety. Mingus v. Butler, 591 F.3d 474,

479-80 (6th Cir. 2010). To satisfy the objective component, Plaintiff must show that the defendant official acted with "'deliberate indifference' to [his] health or safety." Id., 591 F.3d at 479-80 (6th Cir. 2010) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); see also Helling v. McKinney, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Exposure to black mold may, in an appropriate case, be sufficiently serious as to satisfy the objective component of the Eighth Amendment. Compare Board v. Farnham, 394 F.3d 469, 486–87 (7th Cir. 2005) (mold in the ventilation system violates Eighth Amendment), with Causey v. Allison, No. 1:08CV155–RHW, 2008 WL 4191746, at *1 (S.D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); see also McIntyre v. Phillips, No. 1:07–cv–527, 2007 WL 2986470, at *2–*4 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate) (citing Brady v. State Farm Fire & Cas. Co., No. 05–30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006) (dismissing action because Plaintiff did not use due diligence in determining whether mold was airborne or simply present in her house)).

Plaintiff's allegations that the mold infestation in his cell caused him to have health problems is sufficient to satisfy the objective component of the Eighth Amendment. Plaintiff's allegations that Defendants Lindamood, Dethrage, Wilbanks, and Staggs knew about the black mold and the attendant health problems that Plaintiff was experiencing, but repeatedly failed to act to effectively deal with the problem are sufficient to satisfy the subjective component of the Eighth Amendment. Therefore, at this juncture, Plaintiff's allegations are sufficient to state an Eighth Amendment claim regarding the black mold infestation in his cell.

B. Sick Call

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. Estelle v. Gamble, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. Id. at 104-05; Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. Id. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Id. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," Blackmore, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." Napier v. Madison Cnty., 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000) (citing Farmer, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," Farmer, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. Under Farmer, "the official must both be aware of facts from which the inference

9

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837

Construing the complaint liberally, as the Court must, Haines v. Kerner, 404 U.S. 519, 520 (1972), the Court will assume that where the Plaintiff identifies a Nurse without stating his or her name, that Plaintiff intends to identify Nurse Jane Doe. Plaintiff's allegations that his cell was infested with black mold that was making him very sick are sufficient to satisfy the objective component of the Eighth Amendment. Plaintiff's allegations that Nurse Jane Doe repeatedly denied him access to sick call despite being aware that the black mold infesting Plaintiff's cell was making him sick are sufficient to satisfy the subjective component of the Eighth Amendment. As such, at this juncture, the Plaintiff sets forth sufficient facts to state an Eighth Amendment claim for denial of adequate medical care against Nurse Jane Doe.[1]

### III. CONCLUSION

For the reasons set forth herein, Plaintiff has sufficiently stated an Eighth Amendment claim with respect to the infestation of black mold in his cell against Defendants Lindamood, Dethrage, Wilbanks and Staggsy. Additionally, Plaintiff has sufficiently stated an Eighth Amendment claim for deprivation of adequate medical care against Nurse Jane Doe. This action shall be referred to the Magistrate Judge for further proceedings as described in the accompanying order. An appropriate order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] A plaintiff must, generally, serve a defendant in an action within 90 days after filing the complaint. Fed. R. Civ. P. 4(m). As such, Plaintiff has a limited time in which to provide the Court with the identity of Nurse Jane Doe so that service may be effected upon her. The mere naming of a person by use of a fictitious name does not make that person a party to a lawsuit and does not prevent the entry of a final judgment. Nagle v. Lee, 807 F.2d 435, 439 (5th Cir. 1987).